

**New York**
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310

914-997-0500 Telephone
914-997-0035 Fax

www.lowey.com

**Pennsylvania**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohoken, PA 19428-2977

610-941-2760 Telephone
610-862-9777 Fax

November 12, 2013

**BY FACSIMILE TO 914-390-4170**

Honorable Vincent L. Briccetti
United States Courthouse
300 Quarropas Street, Room 630
White Plains, NY 10601

Re:   *Miller v. Wells Fargo, et al.*, No. 13-cv-1541 (VB)

Dear Judge Briccetti:

We represent Plaintiff Miller in this putative class action. We write the Court to address two recent decisions, *Cohen v. American Securities Insurance Co.*, No. 11-3422, 2013 WL 5890642 (7th Cir. Nov. 4, 2013), *aff'g Schilke v. Wachovia Mortgage,* 820 F. Supp. 2d 825 (N.D. Ill. 2011), and *Decambaliza v. QBE Holdings, Inc.*, 13-cv-286-bbc, 2013 WL 5777294 (W.D. Wis. Oct. 25, 2013), that the Wells Fargo and Assurant Defendants have submitted as supplemental authority. *See* Dkt. Nos. 68-71.

Although the Seventh Circuit analyzed somewhat similar issues in *Cohen,* the Circuit's decision turned on clear pleading deficiencies under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), none of which are present in the instant matter. Under the sparse facts pleaded, and as required under *Iqbal*, the Seventh Circuit found that commissions did not amount to kickbacks. The plaintiff's conclusory allegations that Wells Fargo received kickbacks in the form of commissions provided no context as to how or in what form Wells Fargo was actually receiving these kickbacks. Indeed, as the Seventh Circuit noted, "simply calling the commission a kickback doesn't make it one." *Cohen,* 2013 WL 5890642, at *8. In contrast, Plaintiff Miller has clearly and adequately pleaded the nature and pervasiveness of Defendants' kickback scheme throughout his Complaint. *See* Compl. ¶¶ 5, 40-43, 45-46, 49-50, 54, 61, 63, 79, 84, 87, 120-22.

Moreover, among other facts absent from that third amended complaint in *Cohen*– which wholly distinguishes it from the case at bar – was any reference to a special relationship between the parties arising from an escrow account and the authority and responsibilities bestowed upon an escrow agent in handling funds from an escrow account. In contrast to *Cohen*, Plaintiff's Complaint provides facts addressing the "special relationship" that existed between Plaintiffs and Wells Fargo due to Wells Fargo's management of Plaintiffs' escrow account. *See* Compl. ¶¶ 141-47, 152-53. Further, Plaintiff's allegations in *Cohen* did not include many of the allegations before the Court in the instant matter, involving damages in the form of below cost tracking services and fees passed onto the borrowers, and allegations involving Defendants' reinsurance

scheme, none of which factored into the Seventh Circuit's analysis. *See* Compl. ¶¶ 5, 42, 44-45, 74, 87 (e)-(f), 101(b), 120(h).

The facts in the *Cohen* case, and the terms of the contract at issue therein, are also distinguishable in other material respects. The Seventh Circuit explained that the terms of the loan agreement in *Cohen* "specifically contemplate" the payment of fees and commissions to the lender and "warned [the borrower] accordingly." *See Cohen* at **2, 6, and 9 (loan agreement stated, "We may assess a processing fee and our affiliated insurance agent could collect a commission from the insurer."). Here, Mr. Miller's standard form mortgage contract contains no terms or disclosures which allow the lender to collect fees and commissions from the force placement of hazard insurance. *See* Compl. ¶ 16. As such, the basis for dismissal in *Cohen,* that there was no deception and the borrower had contractually agreed to allow the lender to include commissions/kickbacks in its force placed insurance premiums, is wholly inapplicable here.

Moreover, unlike the borrower in *Cohen*, Mr. Miller met his contractual obligations to secure private hazard insurance for his property and he provided proper notice of these policies to Wells Fargo. *See* Compl. ¶¶ 23-32. Wells Fargo's repeated imposition of unnecessary force-placed insurance was therefore a clear breach of the mortgage agreement. It should also be noted that the *Cohen* decision is in many respects at odds with the recent decision of the First Circuit in *Lass v. Bank of America, N.A. et al*, 695 F.3d 129 (1st Cir. 2012) (reversing dismissal of claims for breach of contract, breach of covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment in litigation over force placed flood insurance).

*Decambaliza* is an outlier decision based on the erroneous premise that the forced placed insurance transactions at issue are synonymous with a mortgage borrower purchasing insurance directly from an insurance provider. In denying similar motions to dismiss based upon the New York filed rate doctrine, Judge Nathan in *Rothstein v. GMAC Mortgage, LLC*, No. 12 Civ. 3412 2013 WL 5437648 (S.D.N.Y. Sept. 30, 2013) and Judge Herndon in *Simpkins v. Wells Fargo Bank, N.A.*, No. 12 Civ. 0768, 2013 WL 4510166 (S.D. Ill. Aug. 26, 2013) held that the imposition of the rates on borrowers by a third party (here, Wells Fargo) as a reimbursement charge that Wells Fargo had set with the insurer to maximize profits, was not subject to regulation by the Department of Insurance. *Rothstein* observed that, unlike a direct imposition of rates on plaintiff by its insurer, in the reimbursement scenario, "A [Assurant] receives approval from state regulation to charge a certain rate after which B [Wells Fargo] billed C [Plaintiff] the insurance rate charged by A." 2013 WL 5437648, at *8. *Rothstein* further explained that defendants had failed "to demonstrate that [the] amounts billed in this second scenario are 'similarly filed with, approved by, or regulated and monitored in some way by a governing agency, such as the Department of Insurance, much like the filed rates for hazard insurance policies themselves.'" *Id.* (*quoting Gallo v. PHH Mortgage Corp.*, 916 F. Supp. 2d 537, 546(D.N.J. 2012)); *accord Simpkins,* 2013 WL 451066, at *14 (Defendants failed to establish that undisclosed side agreements "in the form of commissions, kickbacks, or other financial benefits…designed to maximize profits for defendants," had been "filed with, approved by, or



regulated and monitored in some way by a governing regulatory agency such as the Department of Insurance.").[1]

Judge Nathan concluded:

> [I]t would be fair to infer from these facts that the filed and approved rates were not meant to be directly applicable to individual residential mortgage loan borrowers, like Plaintiffs,, and that these rates were not approved for the direct application to such individuals. Defendants have provided no authority to support the contention that the Court can, should, or must grant "per se reasonable" status to rates designed and approved for lenders when those rates are secondarily billed by the lenders to borrowers instead. Accordingly, here, as in *Simpkins*, "Plaintiffs should not be barred under the filed rate doctrine from challenging conduct which is not otherwise addressed by a governing regulatory agency, particularly where defendants bear the burden on the issue of dismissal." See *Simpkins*, 2013 WL 4510166, at *14.

*Rothstein*, 2013 WL 5437648, at *9.[2]

Thank you for the Court's consideration.

Respectfully,

David C. Harrison

cc: All Counsel of record via ECF and Email

---

[1] Indeed, the leading New York cases had only invoked the filed rate doctrine to bar damages where plaintiffs were challenging the rate directly imposed upon them by insurers. See *Wegoland Ltd. v. NYMEX Corp.*, 27 F.3d 17 (2d Cir. 1994); *Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998).

[2] While *Decambaliza* cites (at *2) the wide ranging investigation of collusive forced placed insurance practices by the New York Department of Insurance, the insurance department has not sought to return excessive reimbursement charges paid by loan borrowers.

{2593 / LTR / 00119630.DOCX v2}