UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
WAYNE MILLER, for himself and on behalf :
of all others similarly situated, :
                   Plaintiff, :        **MEMORANDUM DECISION**
 :
v. :        13 CV 1541 (VB)
 :
WELLS FARGO BANK, N.A., WELLS :
FARGO INSURANCE, INC., ASSURANT, :
INC. and AMERICAN SECURITY :
INSURANCE COMPANY, :
                Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Wayne Miller brings this putative class action against defendants Wells Fargo

Bank, N.A. ("Wells Fargo Bank"), Wells Fargo Insurance, Inc. ("Wells Fargo Insurance" and,

together with Wells Fargo Bank, the "Wells Fargo Defendants"), Assurant, Inc. ("Assurant"),

and American Security Insurance Company ("ASIC" and, together with Assurant, the "Assurant

Defendants"), challenging their practice of "force-placing" hazard insurance on residential

properties.  Plaintiff alleges defendants violated the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and also asserts claims under New York

law for breach of contract, breach of the implied covenant of good faith and fair dealing, breach

of fiduciary duty, aiding and abetting a breach of fiduciary duty, unjust enrichment, violation of

Section 349 of the New York General Business Law ("GBL"), and declaratory and injunctive

relief.[1]

---

[1]     Plaintiff brings his breach of contract, breach of the implied covenant of good faith and
fair dealing, and breach of fiduciary duty claims against the Wells Fargo Defendants, and asserts
his unjust enrichment and aiding and abetting claims against the Assurant Defendants.  Plaintiff's
remaining claims are brought against all defendants.

The Wells Fargo Defendants and the Assurant Defendants have filed separate motions to dismiss the Corrected Class Action Complaint ("complaint").  (Doc. ##37, 40).  All defendants have moved to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The Assurant Defendants have also moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, contending plaintiff lacks standing to sue them under Article III of the United States Constitution.

For the following reasons, both motions are GRANTED in part and DENIED in part.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the Class Action Fairness Act, 28 U.S.C. § 1332(d).

## BACKGROUND

The following facts are drawn from the complaint, the exhibit thereto, and documents on which plaintiff relied in bringing suit.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

I.   Plaintiff's Mortgage

In January 2007, plaintiff obtained a $270,000 mortgage loan (the "Mortgage") from American Home Mortgage to purchase his home in Nanuet, New York.  Sometime before November 2008, the Mortgage was assigned to Wells Fargo Bank.

The Mortgage requires plaintiff to "obtain hazard or property insurance to cover all buildings and other improvements" on his property.  (Compl. Ex. 1 at 7).  Any such insurance policy must include a "Standard Mortgage Clause."[2]  (Id.).  The premiums for plaintiff's hazard insurance are among the "Escrow Items" he must pay periodically to Wells Fargo Bank.  (Id. at 5).  The amounts paid for Escrow Items are termed "Escrow Funds."  (Id.).  Wells Fargo Bank

---

[2]      "A standard mortgage clause is intended to protect the interests of a mortgagee from any acts or omissions amounting to a default by the insured."  United States v. Commercial Union Ins. Cos., 821 F.2d 164, 166 (2d Cir. 1987).

must "use the Escrow Funds to pay the Escrow Items." (Id. at 6). Nothing in the Mortgage specifically provides that Wells Fargo Bank owes any fiduciary duties with respect to the Escrow Funds.

If plaintiff fails to maintain the required insurance, the Mortgage authorizes Wells Fargo Bank to "obtain insurance coverage, at [its] option and [plaintiff's] expense." (Id. at 7). An insurance policy purchased by a lender upon the lapse of a borrower's insurance policy is called a "force-placed" insurance policy. The Mortgage provides that Wells Fargo Bank "is under no obligation to purchase any particular type or amount of coverage," and warns that force-placed insurance "will cover" Wells Fargo Bank but might afford less coverage than a policy purchased by plaintiff. (Id.). The Mortgage adds that the cost of force-placed insurance "might significantly exceed the cost of insurance that [plaintiff] could have obtained." (Id.).

In addition to expressly allowing Wells Fargo Bank to force-place insurance if plaintiff's insurance lapses, the Mortgage states that if plaintiff does not "keep [his] promises and agreements," then Wells Fargo Bank "may do and pay for whatever is reasonable or appropriate to protect [its] interest" in plaintiff's property. (Id. at 9).

II.     Plaintiff's Force-Placed Insurance

In January 2007, plaintiff obtained a homeowner's insurance policy. The policy expired October 25, 2008, and was not renewed.

By letter dated January 28, 2009, Wells Fargo Bank notified plaintiff it had purchased hazard insurance from ASIC, a subsidiary of Assurant, because he had not provided proof of insurance. The letter informed plaintiff that the ASIC policy was "obtained with the assistance of Wells Fargo Insurance," a Wells Fargo Bank affiliate, and that Wells Fargo Insurance receives commissions on force-placed insurance obtained for the bank. Plaintiff alleges Wells Fargo

Insurance does nothing to assist in securing force-placed insurance and exists solely to collect commissions.  The ASIC policy was made effective as of October 25, 2008.  Plaintiff does not allege whether his property sustained any damage between October 25, 2008, when his insurance policy expired, and January 28, 2009, when the force-placed policy was issued.  Nor does he allege he informed Wells Fargo Bank about the condition of his property before or after issuance of the force-placed policy, or if Wells Fargo Bank inspected the property itself.  In any event, plaintiff paid the annual premium for this force-placed policy.

Wells Fargo Bank force-placed ASIC hazard insurance policies again in 2010, 2011, and 2012.  These policies covered the period from December 2, 2009, to September 2, 2013.[3] Plaintiff alleges he maintained his own hazard insurance policies covering the period from October 2009 through September 11, 2013, although he has not provided the Court with copies of the policies or discussed their terms in the complaint.  (Compl. ¶¶ 22-30).  Plaintiff told Wells Fargo Bank he had, in fact, procured his own coverage, but the bank refused to remove the force-placed policies for nearly one year or to rescind the accrued premium charges.  Instead, the bank added the premiums to plaintiff's escrow account, thereby raising his monthly mortgage payments by approximately $1,000.

The 2010, 2011, and 2012 force-placed policies each provided $540,000 in coverage and charged annual premiums ranging from $4,037 to $5,184.  Plaintiff alleges $540,000 in coverage was excessive because the balance of his mortgage loan as of 2010 was less than $260,000.  He also challenges the reasonableness of the premiums, contending they include charges for costs unrelated to the protection of Wells Fargo Bank's interest in his property, such as commissions

---

[3]     It appears that two of these policies were made effective as of dates prior to when they were issued.  (See ASIC Decl. Ex. G (policy issued Mar. 3, 2010, but effective Dec. 2, 2009); Ex. L (policy issued Nov. 25, 2011, but effective Sept. 2, 2011)).  Again, plaintiff does not allege whether his property was damaged between the effective and issuance dates, whether he notified Wells Fargo Bank about his property's condition, or whether Wells Fargo inspected the property.

paid to Wells Fargo Insurance or costs incurred monitoring Wells Fargo Bank's mortgage portfolio for lapses in hazard insurance.  Although plaintiff was cautioned the premiums "may be higher than the amount you would pay if you were to purchase coverage from an insurance company of your choice" (ASIC Decl. Exs. I, N), plaintiff describes this statement as a "half-truth" because it does not mention the premiums are inflated by amounts unrelated to the costs of obtaining the insurance itself.  But plaintiff does not dispute the premiums were calculated using rates approved by the New York State Department of Financial Services ("DFS"), the agency responsible for regulating the insurance industry in New York State.

Plaintiff alleges defendants, along with "other insurance producers and entities involved in force-placing insurance on behalf of the Wells Fargo Defendants," perpetrated a scheme to defraud plaintiff "and other borrowers who were required to pay for force-placed hazard insurance."  (Compl. ¶ 83).  Plaintiff makes no mention of the role played by the "other entities" in the alleged scheme, other than that they "assist[ed]" defendants.  (Id.).

## DISCUSSION

I.   Standard of Review

As noted above, the Assurant Defendants have moved to dismiss the complaint under Rule 12(b)(1) for lack of Article III standing and under Rule 12(b)(6) for failure to state a claim.

"[A] district court must generally . . . establish that it has federal constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits" under Rule 12(b)(6).  Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 85 (2d Cir. 2006).

Here, however, the Court need not address standing because the Assurant Defendants have presented merits arguments in the guise of standing arguments.  The Assurant Defendants

5

contend the "filed rate doctrine," see generally Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17 (2d

Cir. 1994), forecloses any argument plaintiff suffered an "injury in fact" by having paid too

much in force-placed insurance premiums, and that even if plaintiff can establish an injury in

fact, he has failed to allege Assurant's conduct caused such an injury.  To be sure, injury in fact

and causation are essential elements of constitutional standing.  See Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560-61 (1992).  But the injury-in-fact inquiry focuses on whether the

alleged injury is "judicially cognizable"—that is, whether it is "distinct and palpable" rather than

"abstract or conjectural or hypothetical," Allen v. Wright, 468 U.S. 737, 751-52 (1984) (internal

quotation marks omitted)—not whether plaintiff can satisfy the injury element of a particular

cause of action.  Clearly, economic injuries, such as those alleged by plaintiff, are judicially

cognizable.  Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin., 710 F.3d 71, 85 (2d

Cir. 2013) ("Even a small financial loss is an injury for purposes of Article III standing.").  And

the causation element of standing is designed to ensure the injury is not the product of "the

independent action of some third party not before the court."  Simon v. E. Ky. Welfare Rights

Org., 426 U.S. 26, 41 (1976).  But Assurant does not claim "some third party not before the

court" caused plaintiff's alleged injuries.

Accordingly, the Assurant Defendants' motion to dismiss for lack of subject matter

jurisdiction is DENIED.  The Court will evaluate plaintiff's claims under the rubric of Rule

12(b)(6).  See Curtis v. Cenlar FSB, 2013 WL 5995582, at *2 (S.D.N.Y. Nov. 12, 2013)

(construing Assurant Defendants' exact same standing arguments as merits arguments).

"The function of a motion to dismiss is merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support thereof."

Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.

1984) (internal quotation marks omitted).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" outlined by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

II.  Federal Claims

A.  RICO

Plaintiff alleges defendants violated RICO Section 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  Thus, to state a claim under Section 1962(c), a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sedima v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted).

Plaintiff has failed to state a RICO claim because he has not adequately alleged an enterprise.[4]

"A RICO enterprise may be a lawful entity or an association-in-fact." Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 405 (S.D.N.Y. 2013). Plaintiff alleges an "association-in-fact" enterprise consisting of defendants "and other insurance producers and entities involved in force-placing insurance on behalf of the Wells Fargo Defendants not named as defendants herein who assist the named defendants in effectuating their scheme to defraud Plaintiff and other borrowers who were required to pay for force-placed hazard insurance." (Compl. ¶ 83).

"[F]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004) (internal quotation marks omitted). To withstand a Rule 12(b)(6) motion, a plaintiff must "explain each participant's role in the alleged course of fraudulent or illegal conduct" to show the enterprise members "functioned as a unit." Id. at 174-75 (emphasis added).

Here, the complaint lacks any allegations about the role of the "other insurance producers and entities involved in force-placing insurance on behalf of the Wells Fargo Defendants," other than the assertion that they "assist the named defendants in effectuating their scheme to defraud Plaintiff and other borrowers who were required to pay for force-placed hazard insurance." (Compl. ¶ 83). Plaintiff's "conclusory naming of a string of entities does not adequately allege an enterprise." First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d at 175 (internal quotation marks omitted).

---

[4]      In so holding, the Court does not reach defendants' alternative arguments to dismiss plaintiff's RICO claim.

Accordingly, plaintiff's RICO claim is dismissed.

B.      RICO Conspiracy

Plaintiff also accuses defendants of conspiring to violate RICO Section 1962(c). Because plaintiff has failed to state a substantive RICO claim, his conspiracy claim necessarily fails as well. Id. at 182.

Accordingly, plaintiff's RICO conspiracy claim is dismissed.

III.     State Law Claims

As a preliminary matter, the Court rejects defendants' argument that the National Bank Act ("NBA"), 12 U.S.C. § 21 et seq., preempts plaintiff's state law claims.

"Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA. For example . . . contracts made by national banks are governed and construed by State laws." Watters v. Wachovia Bank, N.A., 550 U.S. 1, 11 (2007) (internal quotation marks and citations omitted). Indeed, "causes of action sounding in contract, consumer protection statutes and tort have repeatedly been found by federal courts not to be preempted" by the NBA. Baldanzi v. WFC Holdings Corp., 2008 WL 4924987, at *2 (S.D.N.Y. Nov. 14, 2008).

The Court therefore will address plaintiff's state law claims, all of which sound in contract, consumer protection statutes, or tort.

A.      Breach of Contract

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).

Accepting the complaint's factual allegations as true, plaintiff has stated a plausible breach of contract claim against Wells Fargo Bank under the theory that Wells Fargo Bank force-placed policies on plaintiff's property even though his own hazard insurance policies were in effect.[5]

Wells Fargo Bank contends plaintiff has failed to satisfy the second and third elements of his breach of contract claim.[6]  The Court addresses these elements in turn.

       1.    <u>Adequate Performance</u>

Wells Fargo Bank contends plaintiff did not establish "adequate performance" because he allowed his hazard insurance to lapse, in violation of the Mortgage.  But a party can enforce a contract as long as he has not committed a material breach.  See <u>Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.</u>, 500 F.3d 171, 186 (2d Cir. 2007).  "Under New York law, for a breach of a contract to be material, it must go to the root of the agreement between the parties." <u>Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.</u>, 111 F.3d 284, 289 (2d Cir. 1997).  The breach must be "so substantial that it defeats the object of the parties in making the contract."  <u>Id</u>.

Several courts have held that a mortgagor's failure to maintain insurance does not amount to a material breach of the mortgage.  See, e.g., <u>Smith v. SunTrust Mortg. Inc.</u>, 2013 WL 5305651, at *6 (C.D. Cal. Sept. 16, 2013) (collecting cases).  The Court agrees.  It cannot be said

---

[5]      Although plaintiff brings his breach of contract claim against both Wells Fargo Bank and Wells Fargo Insurance, he has failed to allege he contracted with Wells Fargo Insurance.  He therefore cannot maintain a breach of contract action against that entity.

[6]      Wells Fargo Bank also argues plaintiff's breach of contract claim must be dismissed because he failed to comply with the Mortgage's notice and cure provision.  But a party need not provide notice of and an opportunity to cure a breach when doing so would be futile.  <u>Bausch & Lomb Inc. v. Bressler</u>, 977 F.2d 720, 728 (2d Cir. 1992).  Plaintiff alleges he notified Wells Fargo Bank that it had force-placed policies in error, but the bank refused to remove the force-placed policies for nearly one year or to rescind the accrued premium charges.  (Compl. ¶ 32).  Providing notice and an opportunity to cure therefore would have been futile.

that plaintiff's failure to maintain hazard insurance "defeats the object of the parties in making the contract." Frank Felix Assocs., Ltd. v. Austin Drugs, Inc., 111 F.3d at 289.

Accordingly, the Court declines to dismiss plaintiff's breach of contract claim based on his failure to maintain hazard insurance.

2.     Breach

Plaintiff alleges Wells Fargo Bank breached the terms of the Mortgage by (i) purchasing force-placed insurance when plaintiff's own insurance coverage had not lapsed; (ii) purchasing policies with excessive premiums; (iii) "backdating" policies force-placed on his property; and (iv) purchasing force-placed insurance in amounts exceeding the outstanding balance of his mortgage loan.  (Compl. ¶¶ 61, 121-23).  Plaintiff's allegations that Wells Fargo Bank unnecessarily force-placed policies on his property, taken as true, state a plausible breach of the Mortgage; plaintiff's other three theories of breach, however, do not.

a.     Force-Placing Insurance in the Absence of a Coverage Lapse

Under the Mortgage, Wells Fargo Bank could force-place insurance only if plaintiff failed to maintain his own coverage.  (Compl. Ex. 1 at 7).  Yet the complaint alleges Wells Fargo Bank force-placed policies on plaintiff's property for the period from December 2, 2009, to September 2, 2013—even though plaintiff had purchased his own hazard insurance for the same period.  (Compl. ¶¶ 27-31).  And although plaintiff claims he notified Wells Fargo Bank that he had the required insurance, the latter allegedly refused to rescind the accrued premium charges and, instead, added the premiums to his escrow account and raised his monthly mortgage payments by approximately $1,000.  (Id. ¶ 32).  Thus, the complaint plausibly alleges Wells Fargo Bank breached the Mortgage by force-placing insurance on plaintiff's property when plaintiff's voluntarily purchased coverage was in effect, thereby causing plaintiff damages.

11

b.     Excessive Premiums

The Mortgage authorizes Wells Fargo Bank "to pay for whatever is reasonable or appropriate to protect [its] interest in the Property" if plaintiff "do[es] not keep [his] promises and agreements."  (Compl. Ex. 1 at 9).  Plaintiff argues Wells Fargo Bank breached this provision by purchasing force-placed insurance policies with unreasonably high premiums.  But the "filed rate doctrine" defeats plaintiff's argument.

 "The filed rate doctrine bars suits against regulated utilities grounded on the allegation that the rates charged by the utility are unreasonable."  Wegoland Ltd. v. NYNEX Corp., 27 F.3d at 18.  "Simply stated, the doctrine holds that any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers."  Id.  The doctrine "applies whenever a claim would implicate its underlying twin principles of preventing carriers from engaging in price discrimination as between ratepayers and preserving the exclusive role of [] agencies in approving rates."  Simon v. KeySpan Corp., 694 F.3d 196, 205 (2d Cir. 2012) (internal quotation marks omitted).  "District courts in the Second Circuit consistently apply the Filed Rate Doctrine in the insurance context."  Curtis v. Cenlar FSB, 2013 WL 5995582, at *3.  Importantly, the doctrine "applies even when a claim is based on fraud or impropriety in the method by which the rate is determined."  Simon v. KeySpan Corp., 694 F.3d at 205.

Plaintiff does not dispute that the force-placed insurance premiums he paid were calculated using rates filed by ASIC and approved by DFS.  The filed rate doctrine thus precludes any argument Wells Fargo Bank breached the Mortgage by obtaining force-placed insurance policies carrying unreasonably high premiums.

Plaintiff makes two arguments in an effort to escape the filed rate doctrine, neither of which is persuasive.  First, plaintiff claims he is not challenging the premium rates themselves, but rather "Defendants' manipulation of the force-placed insurance market, and the kickbacks that Defendants receive by virtue of their manipulations."  (Pl.'s Mem. at 9).  Simon squarely forecloses this argument.  As noted above, the filed rate doctrine "applies even when a claim is based on fraud or impropriety in the method by which the rate is determined."  Simon v. KeySpan Corp., 694 F.3d at 205.  "[T]he culpability of the defendant's conduct or the possibility of inequitable results" simply does not matter.  Id. (internal quotation marks omitted).

Second, plaintiff contends Wells Fargo Bank cannot rely on the filed rate doctrine because the bank is not subject to DFS's administrative oversight.  But there is no New York authority "for the proposition that the filed rate doctrine cannot bar claims against entities not directly regulated by the rate-making authority."  Roussin v. AARP, Inc., 664 F. Supp. 2d 412, 419 (S.D.N.Y. 2006).  The doctrine's "twin principles of preventing carriers from engaging in price discrimination as between ratepayers and preserving the exclusive role of [] agencies in approving rates" are no less implicated when a plaintiff brings claims against an entity like Wells Fargo Bank, which acquired policies with premiums based on ASIC's filed rate, than when claims are asserted against the rate-filing entity itself.  Simon v. KeySpan Corp., 694 F.3d at 205.

Accordingly, plaintiff's allegations of paying excessive premium rates cannot establish a breach of the Mortgage.

c.     "Backdating"

Plaintiff further alleges Wells Fargo Bank exceeded its authority under the Mortgage "to do or pay for whatever is reasonable or appropriate to protect [its] interest in the Property" by "backdating" force-placed policies—i.e., arranging for the policies to be made effective as of a

13

date prior to the date they were issued.  According to plaintiff, such "backdating" is improper for two reasons:  (i) it forces borrowers to pay insurance premiums for periods during which there was no loss; and (ii) property insurance policies generally include either a "standard mortgage clause" or a "Lender's Loss Payable Endorsement," both of which "provide[] coverage for the lender even after the insured has failed to pay premiums and/or the policy reaches the expiration date."  (Compl. ¶¶ 61-63).

Certainly, it would be neither reasonable nor appropriate to require a borrower to pay for insurance to cover a given period if a lender <u>knew</u> that no loss had occurred during that period. But the complaint does not allege plaintiff's property was undamaged during any lapse in coverage.  Nor does it allege that plaintiff informed Wells Fargo Bank there was no damage to his property, that Wells Fargo Bank inspected the property itself to ascertain its status, or that plaintiff's voluntarily purchased policies included either a "standard mortgage clause" or a "Lender's Loss Payable Endorsement."  Absent such allegations, the Court cannot conclude that "backdating" plaintiff's force-placed policies breached the Mortgage.  As Wells Fargo Bank points out,

> What if damage occurs during that lapse, but its effect is not apparent until much later (such as mold or structural weakening)? Even if a borrower were communicating with a bank about his breach—a rarity—and even if a bank could simply take a borrower's word that there had been no damage—which no prudent bank could—what happens when the borrower is not aware of the damage?  Absent coverage effective on the lapse date, what protects the bank?

(Wells Fargo Reply Mem. at 2).  Like the court in <u>Cannon v. Wells Fargo Bank, N.A.</u>, 2013 WL 3388222, at *6 (N.D. Cal. July 5, 2013), this Court finds these points persuasive.

Accordingly, plaintiff has failed to state a claim that Wells Fargo Bank breached the Mortgage by "backdating" plaintiff's force-placed insurance policies.

          d.      Excessive Force-Placed Insurance Coverage

Plaintiff accuses Wells Fargo Bank of paying more than what was "reasonable or appropriate to protect [its] interest in the Property" by purchasing $540,000 in force-placed insurance when the balance of his mortgage loan was approximately $260,000.  (Pl.'s Mem. at 13 n.18).  Plaintiff's argument rests on the flawed premise that Wells Fargo Bank's interest in his property was limited to the balance of the loan.  But as the court in Lane v. Wells Fargo Bank N.A. explained, "[t]he bank also makes money off the interest rates paid by a borrower on a performing loan, and thus has an interest in insuring a property up to the replacement cost value. Given the transaction costs involved in originating loans, the bank has a reasonable interest in maintaining performing loans."  2013 WL 269133, at *8 (N.D. Cal. Jan. 24, 2013).

Thus, plaintiff has not plausibly alleged Wells Fargo Bank acted unreasonably or inappropriately in purchasing $540,000 worth of force-placed insurance to protect its interest in plaintiff's property.

Accordingly, plaintiff has failed to state a breach of contract claim under the theory that Wells Fargo Bank obtained excessive force-placed insurance coverage.

          B.      Breach of the Implied Covenant of Good Faith and Fair Dealing

New York law implies a covenant of good faith and fair dealing in all contracts.  See Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995).  But a claim for breach of the implied covenant must be dismissed where it is merely duplicative of a breach of contract claim.  See Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013).

Such is the case here.  Plaintiff bases both his breach of contract and breach of the implied covenant claims on Wells Fargo Bank's alleged abuse of its discretion in force-placing insurance.  (Compare Compl. ¶ 119 ("[T]o the extent that the mortgage contracts . . . permitted

the Wells Fargo Defendants to unilaterally 'force-place' insurance, the Wells Fargo Defendants were obligated not to exercise their discretion to do so in bad faith for their own financial gain for the purposes of maximizing profits at borrowers' expense.") with id. ¶ 121 ("[T]o the extent that the mortgage contracts . . . permitted the Wells Fargo Defendants to unilaterally 'force-place' insurance, the Wells Fargo Defendants was [sic] contractually permitted to do so only to the extent required to reasonably protect the mortgagee's interest in the secured property.")).[7]

Accordingly, because plaintiff's "claim for breach of the implied covenant of good faith and fair dealing and his breach of contract claim clearly rest on the same alleged [] practices," his breach of the implied covenant claim must be dismissed.  Cruz v. FXDirectDealer, LLC, 720 F.3d at 125.

C.       Breach of Fiduciary Duty

Plaintiff's breach of fiduciary duty claim must be dismissed because the Mortgage does not create a fiduciary relationship between plaintiff and the Wells Fargo Defendants.

"The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct."  Varveris v Zacharakos, 973 N.Y.S.2d 774, 775 (2d Dep't 2013).  "Generally, the relationship between a borrower and a bank is contractual in nature and does not create a fiduciary relationship between them."  Baumann v. Hanover Cmty. Bank, 957 N.Y.S.2d 111, 114 (2d Dep't 2012).  Although "specific contractual language" may create a fiduciary relationship between a borrower and a bank, Gorham-DiMaggio

---

[7]       Although plaintiff brings his breach of the implied covenant of good faith and fair dealing claim against both Wells Fargo Defendants, Wells Fargo Insurance was not a party to the Mortgage and, therefore, could not possibly have breached the implied covenant.  Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d Cir. 1998) (implied covenant of good faith and fair dealing "relates only to the performance of obligations under an extant contract").

v. Countrywide Home Loans, Inc., 592 F. Supp. 2d 283, 294 (N.D.N.Y. 2008), the Mortgage

language on which plaintiff relies does not do so.

Plaintiff contends Section 3(b) of the Mortgage imposes fiduciary obligations on the

Wells Fargo Defendants.  But that section merely requires Wells Fargo Bank to "use the Escrow

Funds to pay the Escrow Items."  (Compl. Ex. 1 at 6).  A fiduciary relationship does not arise

"simply because the mortgagee makes payments from an escrow account on behalf of the

mortgagor."  Gorham-DiMaggio v. Countrywide Home Loans, Inc., 592 F. Supp. 2d at 295.

Additionally, the Mortgage cannot possibly create a fiduciary relationship between plaintiff and

Wells Fargo Insurance since Wells Fargo Insurance is not a party to the Mortgage.

Accordingly, plaintiff's breach of fiduciary duty claim is dismissed.

D.      Aiding and Abetting a Breach of Fiduciary Duty

Plaintiff accuses the Assurant Defendants of aiding and abetting the Well Fargo

Defendants' breach of fiduciary duty.

Under New York law, "[a] claim for aiding and abetting a breach of fiduciary duty

requires . . . a breach by a fiduciary of obligations to another."  Lerner v. Fleet Bank, N.A., 459

F.3d 273, 294 (2d Cir. 2006).

Because plaintiff fails to state a claim for breach of fiduciary duty, his aiding and abetting

claim necessarily fails as well.

E.      Unjust Enrichment

Plaintiff has failed to state an unjust enrichment claim against the Assurant Defendants.

As the New York Court of Appeals recently explained,

>  [U]njust enrichment . . . is available only in unusual situations
> when, though the defendant has not breached a contract nor
> committed a recognized tort, circumstances create an equitable
> obligation running from the defendant to the plaintiff.  Typical

> cases are those in which the defendant, though guilty of no
> wrongdoing, has received money to which he or she is not entitled.
> An unjust enrichment claim is not available where it simply
> duplicates, or replaces, a conventional contract or tort claim.

Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012) (citations omitted).

This case does not present the "unusual" circumstances supporting an unjust enrichment claim. Plaintiff alleges the Assurant Defendants unjustly enriched themselves by providing grossly overpriced force-placed insurance policies and by "backdating" policies. (Compl. ¶ 127). These allegations undermine any claim by plaintiff that the Assurant Defendants are "guilty of no wrongdoing." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d at 790. Moreover, plaintiff's unjust enrichment claim simply rehashes his aiding and abetting claim, which similarly accuses the Assurant Defendants of foisting on borrowers "unnecessary, duplicative, and exorbitantly priced force-placed insurance." (Compl. ¶ 150).

Plaintiff's unjust enrichment claim must therefore be dismissed.

F.     General Business Law § 349

Plaintiff's GBL Section § 349 claim must be dismissed because the complaint fails to explain how any allegedly deceptive acts or practices caused plaintiff injury.

Section 349 provides: "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." "A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000). "Deceptive acts or practices" are those "likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995). The statute thus requires proof of an

"actual misrepresentation or omission to a consumer." <u>Goshen v. Mut. Life Ins. Co.</u>, 98 N.Y.2d 314, 325 (2002).  Moreover, "[t]he causation element is essential:  The plaintiff must show that the defendant's material deceptive act caused the injury." <u>Newman v. RCN Telecom Servs., Inc.</u>, 238 F.R.D. 57, 74 (S.D.N.Y. 2006) (ellipsis and internal quotation marks omitted).

The complaint lists ten categories of allegedly deceptive acts or practices, only three of which even arguably meet the <u>Oswego</u> standard:

> [M]isrepresenting the reason for the cost of the policies;

> \*       \*       \*

> Misrepresenting in its force-placed insurance notices that borrowers were obligated to pay for backdated insurance coverage for periods during which the lender had no risk of loss due to the passing of time and/or the lender's coverage under a Lender's Loss Payable Endorsement or standard mortgage clause; [and]

> \*       \*       \*

> Misrepresenting that the charges imposed for force-placed insurance were to protect the borrowers' and Defendants' "mutual interests in the property" and that any portions of the premiums returned to Defendants were for expense incurred in connection with force-placed insurance.

(Compl. ¶ 156(d), (f), (i)).  But plaintiff has failed to plead how these allegedly deceptive acts or practices caused his alleged injury, namely, paying more than he should have paid for force-placed insurance.  The alleged practice of charging more than the amount needed to protect Wells Fargo Bank's interest in the property is the reason why plaintiff allegedly paid too much for force-placed insurance.  Defendants' purported misrepresentations and omissions about the pricing and costs of force-placed insurance simply had nothing to do with how the price was determined.

Accordingly, plaintiff's GBL § 349 claim is dismissed.

G.    <u>Declaratory and Injunctive Relief</u>

Count Eight of the complaint seeks declaratory and injunctive relief.  But "[d]eclaratory judgments and injunctions are remedies, not causes of action."  <u>Chiste v. Hotels.com L.P.</u>, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010).  In any event, plaintiff's declaratory judgment claim must be dismissed for the independent reason that it is duplicative of his breach of contract claim. <u>Apple Records, Inc. v. Capitol Records, Inc.</u>, 529 N.Y.S.2d 279, 281 (1st Dep't 1988).  As for plaintiff's request for injunctive relief, "[t]he Court's task on a motion to dismiss is to consider the factual allegations in [plaintiff]'s complaint to determine if they plausibly suggest an entitlement to relief, and not to determine the appropriate remedy."  <u>RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.</u>, 2011 WL 3251554, at *16 (S.D.N.Y. July 28, 2011).

Accordingly, plaintiff's "cause of action" for declaratory and injunctive relief is dismissed.  The Court, however, takes no position on the appropriateness of injunctive relief as a remedy for plaintiff's breach of contract claim.

**CONCLUSION**

The Wells Fargo Defendants' motion to dismiss the complaint is GRANTED as to plaintiff's (i) RICO, (ii) RICO conspiracy, (iii) breach of fiduciary duty, (iv) GBL § 349, and (v) declaratory and injunctive relief claims, and DENIED as to plaintiff's breach of contract claim insofar as plaintiff alleges Wells Fargo Bank force-placed insurance policies while his own insurance coverage remained in effect.

The Assurant Defendants' motion to dismiss is GRANTED insofar as it seeks dismissal for failure to state a claim, and DENIED insofar as it seeks dismissal for lack of subject matter jurisdiction.

The Clerk is instructed to terminate the motions (Doc. ##37, 40) and terminate

defendants Wells Fargo Insurance, Inc., Assurant, Inc., and American Security Insurance

Company.

Dated:  January 30, 2014
        White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge